IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| HOCK FOODS, INC. f/k/a WILLIAMS FOODS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM BLAIR & COMPANY, L.L.C., <br> Serve:  Registered Agent <br>         Timothy L. Burke <br>         222 W. Adams St., Suite 3300 <br>         Chicago, IL  60606 <br><br> Defendant. | Civil Action No. 09-CV-2588 KHV/KGS <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Hock Foods, Inc. f/k/a Williams Foods, Inc. complaining of Defendant William Blair & Company, L.L.C. hereby alleges and says as follows:

1. Hock Foods, Inc. ("Hock Foods") is a corporation organized and existing under the laws of the State of Missouri. At all times relevant, Hock Foods' principal place of business was in Lenexa, Kansas. Hock Foods is the successor to Williams Foods, Inc. through a change in its name.

2. William Blair & Company, L.L.C. ("Blair") is, upon information and belief, a limited liability company organized under the laws of the State of Delaware with its principal place of business in Chicago, Illinois.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity between the parties and the amount in controversy exceeds $75,000. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

4. Hock Foods was formerly known as Williams Foods, Inc. Prior to 2008, Hock Foods' business was comprised of two primary lines of business. It was a leading producer and marketer of dry seasonings, dry sauce mixes and meal enhancing products sold under the "Williams Foods" brand. Hock Foods was also a provider of premium specialty baked goods and related toppings and gift baskets through its "Wolferman's" brand.

5. On or about April 27, 2007, Hock Foods engaged Blair to render investment banking services in connection with the possible sale of Hock Foods or its business lines. Blair prepared and presented to Hock Foods an engagement letter memorializing the terms of the agreement (the "Contract"). A copy of the Contract is attached as Exhibit A hereto and is incorporated herein by reference.

6. Pursuant to the Contract, Blair was to seek a buyer or buyers for Hock Foods or its business lines. Blair would be compensated based upon the size of the transaction or transactions actually consummated. Blair was paid an upfront retainer of $50,000 for its services. In the event a transaction of any size closed, Blair was guaranteed a minimum success fee of $800,000. In the event more than one transaction closed, Blair was guaranteed a minimum success fee of $1,000,000. These minimum success fees were payable irrespective of the size of the transactions.

7. The success fee was subject to being increased above the minimums based on the total amount of "Transaction Consideration" obtained from the transaction or transactions. As set forth in the Contract, the success fee was computed as follows:

| Transaction Consideration | Success Fee |
|---|---|
| $45,000,000-$55,000,000 | $800,000 plus 5% on amounts between $45,000,000 and $55,000,000 |

| | |
|---|---|
| $55,000,000-$60,000,000 | $1,300,000 plus 7.5% on amounts between $55,000,000 and $60,000,000 |
| Greater than $60,000,000 | $1,675,000 plus 10% on amounts over $60,000,000 |

8. The Contract provided a detailed definition of "Transaction Consideration" for purposes of calculating the success fee. "Transaction Consideration" is defined in Section 2 on page 3 of the Contract, Exhibit A hereto, as:

> the total amount of cash and the fair market value of all securities or other property paid or payable . . . including, without limitation (i) amounts paid (A) pursuant to covenants not to compete, employment contracts, employee benefit plans or other similar arrangements (B) to holders of any warrants or convertible securities of [Hock Foods] and (C) to holders of any options or stock appreciation rights issued by [Hock Foods], whether or not vested; (ii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including pension liabilities, guarantees, capitalized or operating leases and the like) of [Hock Foods] repaid, retired, extinguished or assumed in connection with the [transaction], or which otherwise remains outstanding with [Hock Foods] or any affiliate thereof as of the closing of a [transaction] or which is assumed by the acquirer or an affiliate thereof; and (iii) in the case of a sale of substantially all the [Hock Foods] assets, the total consideration paid for such assets plus the net value of any current assets not sold by [Hock Foods].

9. Following the completion of the sales efforts, Hock Foods sold substantially all of its assets in two (2) transactions. (1) Hock Foods sold the Wolferman's business line for the stated amount of $23,500,000, less working capital adjustments, resulting in total consideration paid to Hock Foods equaling approximately $22,165,248. (2) Hock Foods sold the Williams Foods business line for the stated amount of $23,471,500, less working capital adjustments, resulting in total consideration paid to Hock Foods equaling approximately $21,831,455.

10. In connection with the sale of the Williams Foods business line, the president and chief executive officer of Hock Foods, Conrad Hock, entered into a consulting relationship with the purchaser. Pursuant thereto, the purchaser agreed to pay Mr. Hock $360,000 for his services.

11. Hock Foods retained two licensed brands of food products, and one non-branded asset that it excluded from the Williams Foods and Wolferman's sales:

    a. The first licensed brand was a pasta sauce to be marketed under the "Sophia Loren" name pursuant to a licensing agreement with Ms. Loren.

    b. The second licensed brand was a macaroni and cheese product licensed by NASCAR pursuant to a licensing agreement.

    c. The non-branded asset was a life insurance policy on the life of Mr. Hock with a cash value at the time of the transaction of $595,000.

12. Also in connection with the sale of the Williams Foods line of business, the acquirer assumed Hock Foods' leases on warehouse space located in or about Lenexa, Kansas. The warehouses were not owned by Hock Foods at any point in time prior to the closing of the Wolferman's or Williams Foods lines of business. Rather, the warehouses were and continue to be owned by a business trust, the trustee for which is Conrad Hock.

13. Following the consummation of the transactions, Blair calculated the total Transaction Consideration for purposes of determining its success fee at $58,426,500. Blair then calculated the success fee due as $1,556,988. Blair collected the initial $800,000 at the closing of the Wolferman's transaction and collected the additional $756,988 at the closing of the Williams Foods transaction.

14. Blair's calculation of the success fee due was wholly erroneous because it overstated the total consideration received by Hock Foods by approximately $13,500,000. The

success fee charged by Blair should have been based upon a total Transaction Consideration of an amount not exceeding $44,951,703.  Based on that Transaction Consideration, Blair was only entitled to the minimum fee of $1,000,000 pursuant to the Contract, rather than the $1,556,988 erroneously calculated by and actually received by Blair.

15.   Blair used the nominal purchase price for the Williams Foods business line of $23,471,500 without deducting the $1,640,045 in closing and post-closing adjustments contrary to, and in breach of, the express terms of the Contract.  The total amount of cash or other property paid or payable to Hock Foods for the Williams Foods business line was $21,831,455.  Hock Foods did not receive cash or other property totaling $23,471,500.

16.   Similarly, in calculating Transaction Consideration, Blair used the nominal Wolferman's purchase price of $23,500,000, without deducting the $1,334,752 in closing and post-closing adjustments for working capital, contrary to, and in breach of, the express terms of the Contract.  The total amount of cash or other property paid or payable to Hock Foods for the Wolferman's business line was $22,165,248.  Hock Foods did not receive cash or other property totaling $23,500,000.

17.   In calculating the Transaction Consideration, Blair also included the Sophia Loren and NASCAR licensed brands at an estimated total value of $2,000,000.  The inclusion of this amount was wrongful and in breach of the Contract for at least two reasons.  First, under the contract only "the net value of any current assets not sold by the Company" should have been included in the calculation.  Under Generally Accepted Accounting Principles as well as under other accounting principles generally accepted in the industry, the two licensed brands that were retained were not "current assets" of Hock Foods.  Their inclusion in the fee calculation was erroneous and contrary to the express terms of the Contract.  Additionally, the net value of the

licensed brands as of the date of the closings was not $2,000,000, and there was no basis for Blair to place a $2,000,000 value on the licensed brands.  In fact, at or about the time of the closings, Conrad Hock, Jr., the President and Chief Executive Officer of Hock Foods, and the individual that would be responsible for the licensed brands going forward, placed an assumed value on those two products of $120,000.  To date, neither of the licensed brands has generated any income and there is no foreseeable likelihood that they will generate any income.  Consequently, even the $120,000 may have been an overstated value.  Inclusion of a value of $2,000,000 for the licensed brands in the Transaction Consideration calculation was contrary to, and in breach of, the express terms of the Contract.

18.  The largest single error in Blair's calculation related to the warehouses which were leased, but not owned, by Hock Foods.  Blair included the amount of $8,500,000 in the fee calculation reflecting Blair's estimate of the fair market value of the warehouses themselves.

19.  At no time did Blair obtain a purchaser for the warehouses owned by the business trust.  There was no amount of cash paid or payable to Hock Foods in connection with the warehouses.  Hock Foods did not retain the warehouses, as they were never owned by Hock Foods.  Likewise, the warehouses could not be considered "current assets" of any party for purposes of the success fee calculation.  Under Generally Accepted Accounting Principles as well as under other accounting principles generally accepted in the industry, real property held for investment is not a "current asset."  Inclusion of the warehouses in the success fee calculation was contrary to, and in breach of, the express terms of the Contract.

20.  Even if, contrary to the terms of the Contract, the warehouses should have been included, Blair significantly overvalued them for purposes of the success fee calculation.

21.   Blair also erroneously included in its Transaction Consideration calculation the cash value of the life insurance policy on Conrad Hock, Jr.  A life insurance policy is not a current asset under Generally Accepted Accounting Principles or under other accounting principles generally accepted in the industry.  Inclusion of the life insurance policy was contrary to, and in breach of, the terms of the Contract.

## COUNT I
### (Breach of Contract)

22.   The allegations contained in Paragraphs 1-21 are restated and incorporated herein by reference.

23.   Hock Foods and Blair had a valid and enforceable contract pursuant to which Blair was to market and attempt to sell the business lines of Hock Foods.

24.   Pursuant to the terms of the Contract, Blair was to be compensated based on calculation of Transaction Consideration, the definition of which was set forth in detail in the Contract.

25.   Blair's calculation of its success fee was erroneous under the terms of the Contract resulting in an overpayment to Blair of $556,988.00.

26.   Blair has breached the Contract by erroneously calculating the success fee due and by accepting an erroneously high success fee.

27.   Hock Foods has been damaged as a direct and proximate result of said breach of the Contract in an amount in excess of $75,000 to be proven at trial.

WHEREFORE, Hock Foods, Inc. f/k/a Williams Foods, Inc. prays the Court as follows:

1.   That it have and recover judgment against William Blair & Company, L.L.C. in the principal sum of $556,988.00;

2. That it have and recover pre-judgment and post-judgment interest at the maximum rate allowed by law;

3. That the Court tax the costs of this case against the Defendant; and

4. For such other and further relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial

    Respectfully submitted,

    SIEGFREID BINGHAM LEVY
     SELZER & GEE, P.C.


    By: /s/Gordon D. Gee
    Gordon D. Gee USDC, KS #70147
    911 Main Street, Suite 2800
    Kansas City, MO 64105
    Telephone:  (816) 421-4460
    Facsimile:   (816) 474-3447
    ggee@sblsg.com

    and

    James C. Adams, II
    N.C. State Bar No. 18063
    BROOKS, PIERCE, MCLENDON,
     HUMPHREY & LEONARD, LLP
    P.O. Box 26000
    Greensboro, NC  27420
    Telephone: (336) 373-8850
    Facsimile:  (336) 378-1001
    jadams@brookspierce.com