**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

HOCK FOODS, INC. f/k/a WILLIAMS )
FOODS, INC., )
                                     )
             Plaintiff, )               Case No. 09-2588-KHV
                                     )
v. )
                                     )
WILLIAM BLAIR & COMPANY, L.L.C., )
                                     )
             Defendant. )

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiff's Motion to Compel Discovery (ECF No. 52). The motion is fully briefed, and the Court is prepared to rule. For the reasons explained below, Plaintiff's Motion to Compel Discovery is granted in part and denied in part.

**I.       Procedural Requirements to Confer**

The Federal Rules of Civil Procedure and this district's local rules require a moving party to confer with opposing counsel about the discovery dispute before filing a motion to compel. Fed. R. Civ. P. 37(a)(1) provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." This district's local rules expand on the movant's duty to confer, stating that a " 'reasonable effort' to confer means more than mailing or faxing a letter to the opposing party."[1] It requires the parties in good faith to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[2] The local rule also

_____

[1] D. Kan. R. 37.2.

[2] *Id.*

requires the movant to "describe with particularity the steps taken by all attorneys to resolve the issues in dispute."[3]

In this case, the parties have exchanged detailed correspondence and had a telephone conference aimed at attempting to resolve the instant discovery dispute without judicial intervention. The Court finds Plaintiff has satisfied the conference requirements embodied in Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2.

## II.    Background

Prior to 2008, Plaintiff was known as Williams Foods, Inc. and had two primary lines of business: the Williams Foods line, which included spice and gravy mixes; and the Wolferman's brand, which was a catalogue seller of gourmet breads, jams, and jellies.[4]  On April 27, 2007, Plaintiff and Defendant entered into a contract ("Engagement Letter") for Defendant to provide investment banking services in connection with the possible sale of Plaintiff's company or its business lines.[5]  Pursuant to the Engagement Letter, Defendant was to seek a buyer or buyers for Plaintiff's company or its business lines.[6]  In early 2008, after Defendant successfully completed its sales efforts, Plaintiff sold its business lines in two separate asset purchase transactions.[7]

In addition to being paid an upfront retainer for its services, Defendant was guaranteed a

---

[3] *Id.*

[4] Am. Compl. ¶ 4, ECF No. 14.

[5] *Id. ¶* 5 & Ex. A thereto (Engagement Letter), ECF No. 15.

[6] *Id.* ¶ 6.

[7] *Id.* ¶ 9.

minimum "Success Fee," which depended on the number of transactions that closed.[8] The "Success Fee" was subject to being increased based on the "Transaction Consideration" obtained from the transaction or transactions.[9] The Engagement Letter defined "Transaction Consideration" as

> the total amount of cash and fair market value of all securities or other property paid or payable directly or indirectly . . . to the Company . . . including, without limitation, (i) amounts paid (A) pursuant to covenants not to complete, employment contracts, employee benefit plans or other similar arrangements (B) to holders of any warrants or convertible securities of the Company and (C) to holders of any options or stock appreciation rights issued by the Company, whether or not vested; (ii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including pension liabilities, guarantees, capitalized or operating leases and the like) of the Company repaid, retired, extinguished or assumed in connection with the Possible Transaction, or which otherwise remains outstanding with the Company or any affiliate thereof; and (iii) in the case of a sale of substantially all the Company's assets, the total consideration paid for such assets plus the net value of any current assets not sold by the Company.[10]

In the instant lawsuit, Plaintiff contends Defendant erroneously calculated the success fee due under the contract, which resulted in an overpayment to Defendant of $556,988.00.[11] More specifically, Plaintiff asserts Defendant used the wrong purchase price in calculating the "Transaction Consideration" because Defendant failed to deduct certain closing and post-closing adjustments.[12] Plaintiff also contends Defendant incorrectly considered the following to be "current assets:" (1) Sophia Loren and NASCAR licensed brands; (2) warehouses that were leased by

---

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 7.

[10] Engagement Letter ¶ 2, ECF No. 15.

[11] Am. Compl. ¶ 25, ECF No. 14.

[12] *Id.* ¶¶ 15–16.

Plaintiff; and (3) the cash value of a life insurance policy on Conrad Hock, Jr.[13]  Even assuming these were Plaintiff's "current assets,"  Defendant purportedly overvalued the Sophia Loren and NASCAR licensed brands and leased warehouses.[14]  Defendant has counterclaimed, alleging Plaintiff breached the parties' contract by failing to pay the total amount due Defendant.[15]

On July 9, 2010, Plaintiff served its First Set of Interrogatories and First Set of Document Requests upon Defendant.[16]  By apparent agreement of the parties, Defendant served its responses and objections on August 17, 2010.[17]  Defendant objected to Interrogatory No. 7 and Request for Production Nos. 24 and 25 because these requests purportedly seek information that is irrelevant, unduly burdensome, and confidential and proprietary.

Interrogatory No. 7 states:

> Identify and describe in detail any disputes or disagreements –
> regardless  of whether legal action was taken – that You have had
> with any of Your clients in the last ten (10) years regarding Your
> calculation of the transaction consideration or success fee related to
> Your rendering of investment banking services to those clients.  For
> each such dispute, (a) identify the client, (b) describe the basis of the
> dispute, (c) explain how the dispute was resolved, (d) identify the
> contract or agreement between you and the client.[18]

Request No. 24 seeks, "Any engagement letter or other comparable agreement between You

---

[13] *Id.* ¶¶ 17–19, 21.

[14] *Id.* ¶¶ 17, 20.

[15] Answer at 12 ¶ 1, ECF No. 18.

[16] Certificate of Service, ECF No. 36.

[17] Notice of Service, ECF No. 41; Metts Decl. ¶ 4, ECF No. 55-2.

[18] Def. and Countercl. Pl.'s Answer to First Set of Interrogs., ECF No. 53-1.

and any client that You identified in response to Interrogatory No. 7 above."[19]

Request No. 25 seeks, "All documents in any way related to disputes between You and any other client related in any way to the calculation of the Success Fee, Transaction Consideration, or any comparable term in any engagement with that client."[20]

On September 2, 2010, Plaintiff's counsel sent a letter to Defendant's counsel responding to Defendant's objections and indicating he might file a motion to compel if Defendant did not reconsider its position.[21] On September 9, 2010, Defendant's counsel responded and reiterated Defendant's objections based upon relevance and undue burden.[22] Two weeks later, on September 24, 2010, Plaintiff's counsel wrote a letter to Defendant's counsel explaining the purported relevance of the information sought in the requests.[23] On October 5, 2010, Defendant's counsel responded that she was standing by her September 9, 2010 letter.[24] The parties then had a telephone conference on October 21, 2010 in an attempt to resolve the instant discovery dispute. Plaintiff contends that Defendant's counsel during this telephone conference made it clear that Defendant would not relent in its objections.

On December 9, 2010, Plaintiff filed the instant motion seeking an order compelling Defendant to provide the information and documents sought in Interrogatory No. 7 and Request for

---

[19] Def. and Countercl. Pl.'s Answer to First Set of Doc. Reqs., ECF No. 53-2.

[20] *Id.*

[21] Letter from James C. Adams, II to Amanda J. Metts (Sept. 2, 2010), ECF No. 53-3.

[22] Letter from Amanda J. Metts to James C. Adams, II (Sept. 9, 2010), ECF No. 53-4.

[23] Letter from James C. Adams, II to Amanda J. Metts (Sept. 24, 2010), ECF No. 53-5.

[24] Letter from Amanda J. Metts to James C. Adams, II (Oct. 5, 2010), ECF No. 53-6.

Production Nos. 24 and 25.  Plaintiff also seeks an order requiring Defendant to modify its protocol for searching electronically stored information ("ESI") to capture documents that relate to the interpretation of the calculation of "Transaction Consideration" or the "Success Fee."  In its opposition, Defendant objects that the requests seek irrelevant information and are unduly burdensome.[25]  Defendant also argues Plaintiff's motion should be denied as untimely.

## III.    Analysis

### A.    Timeliness

D. Kan. R. 37.1(b) states that "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response . . . that is the subject of the motion."  Here, Defendant served its objections on August 17, 2010. A motion to compel discovery would have been due thirty (30) days thereafter, or by September 17, 2010, unless the time to do so had been extended by the Court.  Plaintiff filed the instant motion on December 9, 2010, nearly three months after the deadline had passed.

Plaintiff contends the deadline to file its motion to compel was November 22, 2010.  Plaintiff appears to have calculated this deadline based upon the parties' October 21, 2010 telephone conference.  However, D. Kan. R. 37.1(b) clearly reflects that the triggering event is the service of

---

[25] In its responses served on August 17, 2010, Defendant objected that the requests sought information and documents that were confidential and proprietary.  In its opposition to the instant motion, Defendant objects only on relevance and undue burden grounds.  "Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."  *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005). Accordingly, the Court will not consider any objection that the information sought is confidential or proprietary.

the response that is the subject of the motion.[26]  This District has consistently construed and applied the thirty day time period under D. Kan. R. 37.1(b) as beginning when specific information *first* leading to a dispute is discovered.[27]  The deadline is not thirty days from the date the parties conclude their efforts to meet and confer.[28]  Furthermore, the deadline is not tolled while the parties are engaged in efforts to resolve the discovery dispute without judicial intervention.[29]  Rather, the common practice is for a party to request, prior to its expiration, an extension of its deadline to file a motion compel with respect to any discovery dispute upon which the parties are still conferring.[30]

In some cases, this District has excused an untimely motion to compel because the movant relied upon opposing counsel's false assurances of compliance.[31]  Plaintiff did not rely upon any representations from Defendant's counsel that Defendant would be providing a further response or producing responsive documents.  Defendant has maintained its objections throughout the course

---

[26] *Cont'l Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *4 (D. Kan. Jan. 7, 2008).

[27] *Id.* (emphasis added).

[28] *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL, 2011 WL 124538, at *3 (D. Kan. Jan. 14, 2011).

[29] *Id.*; *see also Cont'l Cas. Co.*, 2008 WL 73345, at *4 (noting that any other construction of the rule would allow a virtually indefinite extension of the deadline so long as counsel purported to continue engaging in an effort to secure the information informally from the opposing party); *Jones v. Greyhound Lines, Inc.*, No. 08-1185-MLB, 2009 WL 3809810, at *8 n.8 (D. Kan. Nov. 13, 2009) (holding that a motion to compel was due thirty days after responses to discovery requests were due despite that parties had been attempting to resolve the issue without court intervention for several months prior to the filing).

[30] *Layne Christensen Co.*, 2011 WL 124538, at *3.

[31] *See Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. 05-2001-DJW, 2008 WL 5046345, at *1 (D. Kan. Nov. 24, 2008) (citing *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM, 2005 WL 44534, at *1 (D. Kan. Jan. 7, 2005)); *Shultz v. Blue Cross & Blue Shield of Kan., Inc.*, No. 09-1220-WEB, 2010 WL 5067629, at *1 (D. Kan. Dec. 7, 2010).

of the parties' meet and confer process and has never represented it would provide a supplemental response. The Court appreciates that Plaintiff attempted to resolve the issue without judicial involvement, but this fact alone does not excuse an untimely filing or toll the thirty day period in which to file.

Thus, the thirty day period in which to file a motion to compel was triggered when Defendant served its objections on August 17, 2010, and any motion to compel should have been filed by September 17, 2010. Even assuming the deadline was November 22, 2010, Plaintiff's motion is still untimely.

When a motion to compel is filed after expiration of the time allowed for its timely filing, the proper standard to determine if it should be allowed out of time is a showing of excusable neglect.[32] Courts consider four factors to determine excusable neglect: (1) whether the movant acted in good faith; (2) reason for the delay, including whether it was within the reasonable control of the movant; (3) danger of prejudice to the nonmoving party; and (4) length of the delay and its potential impact on judicial proceedings.[33]

Plaintiff's counsel's delay in filing the motion was due in part to his preparation for a multi-week trial, not for any improper purpose.[34] Additionally, Plaintiff has demonstrated it made a good faith effort to resolve the disputed discovery issues before filing its motion to compel. The Court has no reason to believe Plaintiff or its attorney has acted in bad faith. Accordingly, this factor weighs in favor of finding excusable neglect.

---

[32] *Layne Christensen Co.*, 2011 WL 124538, at *1.

[33] *Walls v. Int'l Paper Co.*, 192 F.R.D. 294, 295 (D. Kan. 2000).

[34] Adams Decl. ¶ 5, ECF No. 62.

Turning to the reason for the delay, the press of other legal matters generally does not constitute excusable neglect.[35] Further, it appears Plaintiff's counsel could have been more diligent in his efforts to resolve the instant discovery dispute. For example, it is not clear why the October 21, 2010 telephone conference did not occur until over two weeks after Defense counsel's October 5, 2010 letter. The Court finds the reason for the delay was within Plaintiff's counsel's control. As a result, this factor weighs against finding excusable neglect.

As to the third and fourth factors, the Court's consideration of Plaintiff's motion to compel will not prejudice Defendant or significantly impact the judicial proceedings in this case. The same day Defendant filed its opposition to Plaintiff's motion, Defendant filed a renewed motion to compel. Because there is another discovery dispute pending before the Court, the Court's consideration of Plaintiff's motion to compel will not significantly delay the case. Further, upon joint motion by the parties, the deadline for completing discovery was extended to July 29, 2011.[36]

After careful consideration of the relevant factors, the Court finds Plaintiff has shown excusable neglect. Although the reason for the delay was within Plaintiff's counsel's control, the Court finds this factor alone to be an insufficient basis to deny the motion to compel as untimely.

B.    Relevance

As discussed above, Defendant objects that the information and documents sought in Interrogatory No. 7 and Request for Production Nos. 24 and 25 are irrelevant. Fed. R. Civ. P. 26(b)(1) provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is

---

[35] *Welch v. Centex Home Equity Co., LLC*, No. 03-2132-JWL, 2004 WL 2348295, at *2 (D. Kan. Apr. 23, 2004) (finding that delay caused by an office move and press of business was in control of plaintiff's counsel).

[36] Order, ECF No. 63.

relevant to any party's claim or defense. . . ."[37] Relevant information need not be admissible at trial

so long as it is reasonably calculated to lead to the discovery of admissible evidence.[38] Relevance

is broadly construed at the discovery stage of litigation, and a "request for discovery should be

considered relevant if there is 'any possibility' that the information sought may be relevant to the

claim or defense of any party."[39] Therefore, discovery should ordinarily be allowed "'unless it is

clear that the information sought can have no possible bearing'" on a claim or defense of a party.[40]

　　　There is no presumption in the Federal Rules of Civil Procedure that a discovery request

is relevant.[41] The proponent of a discovery request must, in the first instance, show the relevance

of the requested information to the claims or defenses in the case.[42] In many instances, relevance

is apparent on the face of the request because relevance is liberally construed in discovery.[43] When

relevancy is not readily apparent, the proponent has the burden of showing the relevancy of the

discovery request.[44]

　　　If the requesting party meets its initial burden of demonstrating relevance, the burden shifts

---

[37] Fed. R. Civ. P. 26(b)(1).

[38] *Id.*

[39] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[40] *Id.*

[41] *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

[42] *Id.*

[43] *Id.*

[44] *Id.*; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996).

to the party resisting discovery to establish lack of relevance by demonstrating that the requested discovery either (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[45]

In this case, the parties dispute what assets should have been included in the calculation of "Transaction Consideration" pursuant to the parties' Engagement Letter and how those assets were valued. The parties disagree on the meaning of the terms "Transaction Consideration," "current assets," and "Success Fee."

Under Illinois law, when a dispute exists between the parties as to the meaning of a contract provision, the threshold question is whether the contract is ambiguous.[46] Where the terms of the contract are clear, their meaning must be determined solely from the language of the agreement itself.[47] The corollary of this rule is that where the contract language is ambiguous, extrinsic evidence is admissible to determine the parties' intent and clarify the meaning of the ambiguous terms.[48] Additionally, extrinsic evidence may be considered provisionally for the limited purpose

---

[45] *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004).

[46] *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 319 (Ill. App. Ct. 2002). The Engagement Letter states that it will be governed by the laws of the State of Illinois. Engagement Letter ¶ 6, ECF No. 15. Although Plaintiff initially cited Kansas law in its memorandum, Plaintiff does not appear to dispute that Illinois law governs the issue of whether extrinsic evidence will be admissible to interpret the Engagement Letter. Regardless, there does not appear to be a substantive difference between Kansas and Illinois law on this issue.

[47] *Reynolds v. Coleman*, 527 N.E.2d 897, 902–03 (Ill. App. Ct. 1988).

[48] *See Installco Inc.*, 784 N.E.2d at 319.

of determining whether an ambiguity exists.[49]

In its opposition, Defendant does not argue the Engagement Letter is unambiguous and appears to concede that certain types of extrinsic evidence may be admissible. Morever, the trial judge has not yet been asked to determine whether or not the parties' Engagement Letter is ambiguous. Thus, it is possible extrinsic evidence *may* be admissible to determine the parties' intent and understanding of the Engagement Letter, and the Court will not narrow the scope of discovery by assuming extrinsic evidence will not be admissible.[50]

In Interrogatory No. 7 and Request for Production Nos. 24 and 25, Plaintiff seeks information and documents relating to disputes or disagreements Defendant had with clients other than Plaintiff regarding Defendant's calculation of "Transaction Consideration." The Court agrees with Plaintiff that the manner in which Defendant has interpreted the terms "Transaction Consideration," "current assets," and "Success Fee" in substantially similar agreements with other clients could be probative of Defendant's intended meaning and understanding of those terms when entering into the contract with Plaintiff. Of course, it is possible Defendant might be able to distinguish the facts and circumstances surrounding how it resolved other fee disputes from the facts of this case. However, at this point, it is not "clear that the information sought can have no possible bearing'" on a claim or defense of a party. As a result, the Court finds the requests to be facially relevant.

Thus, the burden shifts to Defendant to demonstrate the documents and information sought

---

[49] *Bright Horizons Children's Ctrs., LLC v. Riverway Midwest II, LLC*, 931 N.E.2d 780, 792 (Ill. App. Ct. 2010).

[50] *See Protective Ins. Co. v. Montgomery Tank Lines, Inc.*, No. 89 C 2793, 1989 WL 165113, at *4 (N.D. Ill. Dec. 28, 1989).

in the disputed requests are irrelevant. Defendant argues the Court may consider extrinsic evidence relating only to the previous agreements *between* the parties, pre-contractual negotiations *between* the parties, and the circumstances surrounding those negotiations *between* the parties, not Defendant's contracts with third parties. In support of its position, Defendant cites various Illinois cases in which courts have considered extrinsic evidence of the parties' prior dealings and negotiations with each other.[51] However, the courts in these cases did not preclude other types of extrinsic evidence from being considered or hold that only the types of extrinsic evidence admitted in those cases could be considered by courts in interpreting a contract.

Defendant has not cited any authority in which a court has expressly precluded extrinsic evidence relating to a party's contracts with third parties nor has this Court found any such authority. On the contrary, some courts have allowed discovery of a party's contracts with third-parties as long as the contracts are analogous.[52] Further, courts in Illinois permit extrinsic evidence of industry-wide customs or trade usage, which necessarily involves third party contracts.[53] Accordingly, the Court overrules Defendant's relevance objection.

---

[51] *See, e.g., Rybicki v. Anesthesia & Analgesia Assoc., Ltd.*, 615 N.E.2d 1236, 1243 (Ill. App. Ct. 1993) (considering discussions between the parties); *First Ill. Nat'l Bank v. Knapp*, 615 N.E.2d 75, 80 (Ill. App. Ct. 1993) (considering parties' pre-contract negotiations); *Wald v. Chicago Shippers Ass'n*, 529 N.E.2d 1138, 1146–47 (Ill. App. Ct. 1988) (considering prior course of dealings between the parties); *Kurti v. Fox Valley Radiologists, Ltd.*, 464 N.E.2d 1219, 1226 (Ill. App. Ct. 1984) (taking into account the conduct of the parties over the course of the contract at issue).

[52] *See Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 406977, at *3 (N.D. Ill. Mar. 15, 2002); *Protective Ins. Co.*, 1989 WL 165113, at *3–*4 (overruling magistrate's order and permitting discovery relating to plaintiff's contracts and dealings with third parties).

[53] *Protective Ins. Co.*, 1989 WL 165113, at *4 ("Course of dealing and usage of trade undoubtedly refer to what parties did in other contracts . . .").

C.     Undue Burden

Defendant also argues Interrogatory No. 7 and Request for Production Nos. 24 and 25 are unduly burdensome.  As the party asserting the objection, Defendant has "'the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome.'"[54]  Additionally, Defendant has the burden to show "'not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.'"[55]  This imposes an obligation on Defendant "'to provide sufficient detail in terms of time, money and procedure required to produce the requested documents.'"[56]  Any objections that discovery is unduly burdensome must contain a factual basis for the claim,[57] and the objecting party must usually provide an "affidavit or other evidentiary proof of the time or expense involved" in responding to the discovery request.[58]

In support of its undue burden objection, Defendant has submitted the declarations of Arthur Simon, Defendant's General Counsel, and Shirela Patterson, a Litigation Technology Project Manager for defense counsel.  Based upon their declarations, Defendant argues compiling the information and documents sought in the discovery requests would involve the following two

---

[54] *G.D. v. Monarch Plastic Surgery*, No. 06-2184-CM, 2007 WL 201150, at *2 (D. Kan. Jan. 22, 2007) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

[55] *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 3171768, at *2 (D. Kan. Oct. 29, 2007) (quoting *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 380 (D. Kan. 2005)).

[56] *G.D.*, 2007 WL 201150, at *2 (quoting *Horizon Holdings, L.L.C.*, 209 F.R.D. at 213).

[57] *Barnes v. Akal Sec., Inc.*, No. 04-1350-WEB, 2005 WL 3359717, at *2 (D. Kan. Dec. 9, 2005).

[58] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 653 (D. Kan. 2004).

options:

- [Defendant] first would have to identify every potentially relevant client. Even assuming that Plaintiff's failure to limit the time covered by Request No. 25 was inadvertent, and reading in the ten-year period that applies to the other two Disputed Requests, [Defendant] conservatively estimates that it has worked with between 1,000 and 1,500 investment banking clients over the past ten years. (Affidavit of Arthur Simon ("Simon Aff."), attached as Ex. B, ¶ 4.) In 2010 alone, [Defendant] consummated transactions for 150 investment banking clients and terminated an additional 104 investment banking client engagements. (Simon Aff., ¶ 4.) [Defendant] entered into engagements with at least 250 new investment banking clients during that period. (Simon Aff., ¶ 4.) Next, [Defendant] would have to interview key members of the team assigned to work with each of those 1,000 to 1,500 clients to determine whether any dispute, defined in the broadest possible sense, had ever arisen in connection with that client's engagement. (Simon Aff., ¶ 5.) Assuming the preceding steps were even possible given the huge range of time and the unlikelihood that the necessary employees are still at [Defendant], [Defendant] would then have to search all electronic and hard copy records for any and all documents that relate to that dispute. (Simon Aff., ¶ 6.) Conducting the interviews of key team members alone would take hundreds of hours, and the resulting searches could take hundreds more.

- In the likely event that [Defendant] cannot identify through employee interviews any and all disputes with its investment banking clients over the past ten years, [Defendant] would have to search its entire universe of electronic and hard copy documents for each of its corporate finance offices (Chicago, Boston, London, New York, San Francisco, and Shanghai) for any and all documents relating to disputes, again defined in the broadest possible sense. (Simon Aff., ¶¶ 4, 6.) This universe comprises 12,786 boxes of hard copy documents and 12 terabytes—12,000 gigabytes—of electronic data on [Defendant's] file and exchange servers. (Simon Aff., ¶ 6; Affidavit of Shirela Patterson ("Patterson Aff."), attached as Ex. C, ¶ 4.) This District has conceptualized one gigabyte as the equivalent of a "truck load" of documents. *Apsley*, 2007 U.S. Dist. LEXIS 5144, at 836 n.30 (refusing to compel defendant to respond to a document request calling for review of at least 22 gigabytes of electronic information). It is impossible to even begin to calculate the time and expense associated with searching 12,000 truck loads of electronic documents alone. The search Plaintiff demands would be the

discovery equivalent of searching for a needle in a haystack—an irrelevant needle.[59]

Plaintiff states it has requested information and documents relating only to Defendant's disputes, during its past ten years, with its clients who (1) signed the same standard contract that is at issue in this case[60] and (2) had a dispute with Defendant regarding the calculation of "Transaction Consideration." Plaintiff contends Defendant has purposely mischaracterized the burden in responding to the requests at issue by making it appear that Plaintiff has requested documents and information with respect to every client, every contract, and every single dispute that Defendant has had with any of its clients over the past ten years. As a result, Plaintiff argues the declarations do not provide the Court with any evidence as to the true and actual burden involved in complying with the requests.

Plaintiff apparently takes issue with Mr. Simon's statement that to identify the clients with whom Defendant had a dispute or disagreement related to compensation, Defendant would either need to (1) search through every record of its clients over the past ten years or (2) interview key members of the teams assigned to work with each one of its clients over the past ten years. Defendant does not appear to have mischaracterized its burden. Assuming Interrogatory No. 7 is

---

[59] William Blair & Co., L.L.C.'s Opp'n to Hock Foods' Mot. to Compel Disc., ECF No. 55.

[60] It is not clear to the Court whether Interrogatory No. 7 is limited to clients who signed the same standard contract at issue in this litigation. Interrogatory No. 7 asks Defendant to identify and describe in detail any disputes or disagreements regarding Defendant's calculation of the transaction consideration or success fee. In what has been provided to the Court, Plaintiff has not defined the terms "transaction consideration" or "success fee." Thus, Interrogatory No. 7 encompasses any contract containing the terms "transaction consideration" or "success fee" even if those terms differ substantially from how they appear in the Engagement Letter. It is possible Plaintiff defined those terms in its original discovery requests, but those were not attached to the instant motion.

16

limited to the same contract that is at issue in this litigation, it is possible Defendant used the same standard contract with each of its client over the past ten years such that it would need to search each of those files to find the clients with whom it had a dispute regarding compensation. Even assuming Defendant used different contracts during the past ten years, the process described by Mr. Simon might be the only way to identify the clients that entered into the same contract with Defendant. It would not be particularly surprising to the Court if there were no easier way to identify the clients that had the same contract with Defendant as Plaintiff. Although it would have been helpful if Mr. Simon had provided some additional details about how long and widespread the contract at issue has been used by Defendant, the Court cannot conclude Defendant has exaggerated its burden involved in locating the information and documents responsive to Interrogatory No. 7 and Requests for Production Nos. 24 and 25.[61]

Based upon the process described in the affidavits submitted by Defendant, the Court finds the requests to be unduly burdensome. More specifically, the benefits to be secured from the discovery do not outweigh the burden or expense in responding to the requests at issue. Here, the requests seek information regarding any disputes or disagreements regardless of whether legal action was taken. Plaintiff does not appear to have defined the phrases "dispute" or "disagreement." The requests are broad enough to include situations in which Defendant made a mathematical error in calculating the "Transaction Consideration." As a result, although the requests seek relevant information, they would also sweep in information that would likely have little or no probative value

---

[61] There is no temporal scope identified in Request for Production No. 25. As a result, it is facially over broad, and the Court will limit the request to the same ten year period identified in Interrogatory No. 7. *See Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003) (holding that plaintiffs' failure to limit the temporal scope of interrogatories made them overly broad on their face).

to the issues in this litigation.  Further, the probative value of the type of extrinsic evidence being sought is relatively low compared to other types of extrinsic evidence.[62]

However, a party must still respond to an interrogatory or request for production to the extent it is not objectionable.[63]  Defendant has not indicated whether prior similar disputes with any of its other clients occurred.  The Federal Rules require a party to conduct a reasonable search for responsive information.[64]  The Court believes Defendant can provide responsive information and documents by conducting a less burdensome search than described by Mr. Simon.  It is difficult for the Court to delineate the exact parameters of such a "reasonable" search, however, because it does not have enough information about Defendant's record keeping system.  At a minimum, it seems reasonable for Defendant to inquire of certain key employees, such as Mr. Simon, whether they are aware of any such disputes.  Further, if Defendant's in-house General Counsel maintains its own files that contain a subset of customers with whom Defendant has had a dispute, it would seem significantly less burdensome for Defendant to search those files.  Accordingly, Defendant shall

---

[62] *See Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 701 (7th Cir. 2002) (ranking types of extrinsic evidence in order of importance).

[63] *Van Deelen v. Shawnee Mission Sch. Dist. #512*, No. 03-2018-CM, 2003 WL 22849185, at *2 (D. Kan. Nov. 24, 2003); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 199 (D. Kan. 1996).

[64] *See Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *2 (D. Kan. Oct. 31, 2006) (requiring a party to conduct a reasonable search for documents responsive to requests for production); *Walker v. THI of N.M. at Hobbs Ctr.*, No. 09-0060 JB/RLP, 2010 WL 552661, at *12 (D.N.M. Feb. 8, 2010) (ordering party responding to discovery request to conduct a diligent search for responsive documents); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 626 (D. Colo. 2007) (indicating that Rule 34 imposes an affirmative duty to seek information reasonably available through a party's employees, agents, and others subject to its control); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (stating that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production).

provide a supplemental response to Interrogatory No. 7 and Requests for Production Nos. 24 and 25 within 21 days of this Order. The Court encourages the parties to meet and confer in an effort to agree upon a more narrowed search.

        D.        <u>Search Protocol for ESI</u>

Plaintiff has also requested Defendant modify its search protocol for ESI to encompass any documents that reflect Defendant's interpretation of the terms "Transaction Consideration" and "Success Fee" as those terms are used in Defendant's standard Engagement Letter.

Fed. R. Civ. P. 26(b)(2)(B) provides,

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Among other things, Rule 26(b)(2)(C) provides that the Court, on motion or on its own, must limit the extent of discovery if it determine that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

As reflected in Mr. Simon's declaration, there appear to be 12 terabytes of electronic data on Defendant's file and exchange servers that could contain responsive documents.[65] This translates

---

[65] Simon Decl. ¶ 6, ECF No. 55-3.

to 12,000 gigabytes of information.[66]  Defendant estimates it would cost between $100 to $300 per gigabyte to run search terms, resulting in a cost of between $1.2 million and $3.6 million dollars, without accounting for the cost to review the search results.[67]  The Court concludes it would be unduly burdensome for Defendant to search all of its electronic documents for responsive information as originally requested.

However, this type of search would only be required if Defendant could not identify "up-front" the clients with whom Defendant had disputes or disagreements about compensation.  As discussed above, the Court will not require Defendant to undertake the search described in Mr. Simon's declaration, but rather conduct a reasonable search for responsive information and documents.  Part of any such reasonable search might include a more limited search of Defendant's ESI.  For example, it might be appropriate to search Mr. Simon's emails or other key executives who were likely to have been involved in any disputes or disagreements.  Additionally, if Defendant's search of its hard copy documents reveals only a handful of clients with whom it had a disagreement, it might be reasonable to search the emails of the individuals who were involved in those disputes.  At this point, however, the Court does not have enough information to provide further guidance to the parties on the scope of searching Defendant's ESI.

## IV.    Attorney Fees and Expenses

Under Federal Rule of Civil Procedure 37(a)(5)(C), if a motion to compel is granted in part and denied in part, as is the case here, then the Courts may "apportion the reasonable expenses for the motion."  The Court has reviewed the relevant filings and concludes that it is appropriate in this

---

[66] Patterson Decl. ¶ 4, ECF No. 55-4.

[67] *Id.*

case to require the parties to bear their own expenses incurred in connection with this motion.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery (ECF No. 52) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendant shall provide a supplemental response to Interrogatory No. 7 and Request for Production Nos. 24 and 25 within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2011 at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge